IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

ANTWONE FREEMAN                    §
                                   §
VS.                                §   CIVIL ACTION NO. 4:10-CV-888-Y
                                   §
CITY OF FORT WORTH, TEXAS,         §
et al.                             §

ORDER GRANTING MOTIONS FOR
SUMMARY JUDGMENT AND MOTION TO DISMISS, AND
GRANTING IN PART AND DENYING IN PART MOTIONS TO STRIKE

        Plaintiff Antwone Freeman filed the instant lawsuit under 42

U.S.C. § 1983 against the City of Fort Worth, Texas, and three of

its police officers, Yatashka Jefferson, J.D. Preston, and K.D.

Rowell.  The officers invoked the defense of qualified immunity,

and the Court entered a scheduling order (doc. 9) staying all

discovery in this case pending resolution of the qualified-immunity

issue.   The officers now move for summary judgment on their

qualified-immunity defenses (docs. 13, 21, 23) and the City moves

to dismiss all state-law claims against the individual defendants

(doc. 29).  In addition, officers Preston and Rowell move to strike

(docs. 43, 46) certain portions of Freeman's summary-judgment

evidence.   After review, the Court will grant the motions for

summary judgment, grant the motion to dismiss, and grant in part

and deny in part the motions to strike.


I.  Evidentiary Objections

    A.  Freeman's Objections

    Before turning to the merits of the dispositive motions, the

Court will address the parties' evidentiary objections, beginning with Freeman's.[1]  Freeman raises some twenty-seven objections to the affidavits of Jefferson, Preston, Rowell, and Tammy Padmore, the Wal-Mart manager who was on duty when the incident in question occurred.  These objections can be divided into three classes.

In the first class, Freeman challenges numerous statements as being "overly broad," "vague," "ambiguous," "speculative," "conclusory" or some combination thereof.  Many of these objections are without merit and can be summarily overruled.  And because of the great number of these objections, the Court will not discuss each one individually.  A few examples, however, will illustrate the nature of the objections and demonstrate why they should be overruled.

Freeman challenges Jefferson's statement that "Freeman then got in line and began complaining loudly about having to wait," on grounds that the phrase "complaining loudly" is "[o]verly broad, vague, [and] ambiguous."  (Jefferson Aff. 2; Pl.'s Resp. Br. to Jefferson's Mot. Summ. J. 7.)  Similarly, Freeman objects to Preston's statement that Freeman "tried to free the child who appeared to be in danger due to the way Freeman was grabbing him,"

---

[1] In supporting or responding to a motion for summary judgment, "[a] party may object that the material cited [by the opposing party] to support or dispute a fact cannot be presented in a form that would be admissible in evidence."  Fed. R. Civ. P. 56(c)(2).

on grounds that "appeared to be in danger" is an "[o]verly broad" and "vague" phrase. (Preston Aff. 2, at ¶ 4; Pl.'s Resp. to Jefferson's Mot. Summ. J. 13.) But in the Court's view, "complaining loudly" and "appeared to be in danger" are commonly-used phrases that are sufficiently clear to enable a reasonable factfinder to understand what the affiant means. Therefore, these objections--and those like them--are without merit and are easily overruled.

The first class does contain one objection, however, that the Court finds persuasive. Freeman objects to Preston's statement that Freeman's "actions clearly and intentionally put the child in the middle of that situation for no reason but to use the child as a shield," on the ground that the statement is "speculative." (Preston Aff. 3, at ¶ 3; Pl.'s Resp. to Jefferson's Mot. Summ. J. 13.) Certainly, Preston is without personal knowledge of Freeman's motivation in reaching for his nephew. That is, Preston cannot know whether Freeman acted "intentionally." Accordingly, this statement is EXCLUDED, and Freeman's objection to the statement is SUSTAINED. *See* Fed. R. Evid. 602; Fed. R. Civ. P. 56(c)(4). But for the reasons set forth above, all other objections in class one are OVERRULED.

In the second class of objections, Freeman challenges the admissibility of various statements on the ground that those statements are "fact question[s] for the jury." (Pl.'s Resp. to

Jefferson's Mot. Summ. J. 16.)  This, of course, is not a basis for excluding evidence.  To the contrary, that a fact question exists **invites** the production of testimonial evidence to aid the fact-finder in making accurate findings on that issue.  Thus, the objections in class two are OVERRULED.

In the third class of Freeman's objections, he objects to a number of statements on the ground that the affiant "knowingly misstates" the facts.  Freeman contends that this is evident from Wal-Mart security-camera footage ("the Wal-Mart video").  (App. to Jefferson's Mot. Summ. J. Ex. A-2.; App. to Preston's Mot. Summ. J. Exs. A-B; App. to Rowell's Mot. Summ. J. Exs. A-B.)  But after review the Court is unable to agree.  Freeman's objections on this point simply reflect his characterization of the events captured on the Wal-Mart video.  His objections, therefore, go to the weight that should be given the affiants' statements, not the admissibility of those statements.  Accordingly, all objections in class three are OVERRULED.[2]

B.  Preston and Rowell's Motions to Strike

Preston and Rowell initially object to a number of documents cited by Freeman in his summary-judgment briefing because those documents are not included in Freeman's summary-judgment appendices

---

[2] Even were the Court to sustain Freeman's objections and thereby exclude the defendants' affidavits, the record would nevertheless contain evidence of many of the facts sworn to in the defendants' affidavits.  *See, e.g.*, App. to Pl.'s Resp. to Jefferson's Mot. Summ. J. Ex. 3.

and have not been provided to the defendants for review.[3] Obviously, if a document has not been filed with the Court, it is not summary-judgment evidence. *See Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) ("The party opposing summary judgment is required to identify specific evidence **in the record** and to articulate the precise manner in which that evidence supports his or her claim." (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994)) (emphasis added)). For that reason, the report of "Harold Warren" and the affidavits of "Adams" and "Salazar" are EXCLUDED, and Preston and Rowell's objections on this point are SUSTAINED.[4]

Preston and Rowell also object to the admission of Freeman's original state-court petition, which Freeman attempts to incorporate by reference into his response brief. Unverified and unsworn pleadings are not competent summary-judgment evidence. *See Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 544 n.13 (5th Cir. 2002), *overruled on other grounds by Grand Isle Shipyard, Inc. v. Seacor Marine, LLC*, 589 F.3d 778 (5th Cir. 2009). Therefore, this objection is SUSTAINED, and Freeman's state-court

---

[3] Freeman did not file a response to the motions to strike.

[4] Preston and Rowell also object to Freeman's attempt at incorporating his response to Jefferson's summary-judgment motion into his response to their motions. But this objection is futile given that Freeman filed a virtually identical response brief and appendix to each of their motions as well.

petition is EXCLUDED.[5]

In addition, Preston and Rowell object to the affidavit of Dan G. Lewis, which is included in each of Freeman's summary-judgment-response appendices. Preston and Rowell contend that the Lewis affidavit should be excluded under Federal Rules of Evidence 702 and 1002. And after review, the Court agrees. Rule 702 provides that if "specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue," a qualified expert witness may testify "if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Civ. P. 702.[6] In his affidavit, Lewis offers opinion testimony based on his "security training and experience." (Lewis Aff. 1, at ¶ 1.) But nowhere in his affidavit does Lewis identify who he is or what his qualifications are.[7] Moreover, even assuming

---

[5] This, of course, does not mean that Freeman's state-court petition is removed from the docket. It simply means that the facts alleged in the state-court petition will not be entered into evidence.

[6] Under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), district judges are to act as "gate-keepers," ensuring that only relevant and reliable expert testimony is admitted into evidence. *See Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243-44 (5th Cir. 2002). "This gate-keeping obligation applies to all types of expert testimony, not just scientific testimony." *Id.* (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999)).

[7] In paragraph two of his affidavit, Lewis states that his "qualifications for presenting the requested opinions are reflected in [his] [c]urriculum [v]itae." (Lewis Aff. 1, at ¶ 2.) But no "curriculum vitae" is provided.

Lewis is qualified to give expert testimony on "security" matters, he does not disclose his analysis or otherwise explain the methods he used in arriving at his conclusions. The Court is, therefore, unable to evaluate the sufficiency of Lewis's qualifications or the reliability of his methods. In view of these shortcomings, the Court concludes that Lewis's purported expert testimony must be excluded under Rule 702.

Furthermore, even assuming Lewis's testimony were compatible with Rule 702, much of the Lewis affidavit would be inadmissible in light of Rule 1002. Also known as the "best-evidence rule," Rule 1002 states that "[t]o prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required." Fed. R. Civ. P. 1002. Thus, because much of Lewis's testimony seeks to describe the contents of the Wal-Mart video, it is inadmissible under the best-evidence rule.[8] Accordingly, in light of Rules 702 and 1002, the Lewis affidavit is EXCLUDED in its entirety.

Preston and Rowell's final evidentiary challenge is to the admissibility of Freeman's own affidavit. They contend that it should be excluded as conclusory, self-serving, and internally inconsistent. But these contentions go to the weight that should

---

[8] Preston and Rowell also contend that Lewis's testimony implicates issues of law and thus invades the province of the Court. Because the Court finds the Lewis affidavit inadmissible on other grounds, the Court need not reach this question.

be given Freeman's affidavit, not the admissibility of the affidavit. Preston and Rowell's objections on this point are, thus, OVERRULED. The Court does conclude, however, that the portions of the Freeman affidavit purporting to explain the contents of the Wal-Mart video should be excluded under the best-evidence rule. *See* Fed. R. Evid. 1002. This objection is, therefore, SUSTAINED and those statements are EXCLUDED. And in view of the foregoing, Preston and Rowell's motions to strike are GRANTED in part and DENIED in part.

That said, the Court also concludes, however, that it should accord no probative value to the Freeman affidavit. First, as Preston and Rowell point out, the affidavit is internally inconsistent, and Freeman has offered no explanation for his self-contradiction. For example, in paragraphs 4, 5, and 7 of his affidavit, Freeman testifies that Jefferson, Preston, and Rowell each informed him that he was "going to jail." (Freeman Aff. 2-4, at ¶¶ 4, 5, 7.) But elsewhere in paragraph 7, Freeman testifies that he had not been told that he was going to be arrested. (*Id.* at 4-5, ¶ 7.) Additionally, in paragraph 4, Freeman testifies that Jefferson told him to go outside. (*Id.* at 2-3, ¶ 4.) Subsequently, however, in paragraph 7, Freeman testifies that Jefferson never asked him to leave the store and never told him that he was free to leave or that the Wal-Mart staff wanted him to leave. (*Id.* at 5, ¶ 7.) Therefore, Freeman's affidavit is self-contradictory and

8

insufficient to create a dispute of fact as to any material issues. *See Albertson v. T.J. Stevenson & Co.*, 749 F.2d 223, 228 (5th Cir. 1984) ("[T]he nonmovant cannot defeat a motion for summary judgment by submitting an affidavit [that] directly contradicts, without explanation, his previous testimony." (citing *Kennett-Murray Corp. v. Bone*, 622 F.2d 887, 894 (5th Cir. 1980))).

Second, in addition to being self-contradictory, the Freeman affidavit is inconsistent with the Wal-Mart video and the audio recording of Jefferson's call to the dispatcher ("the Jefferson audio clip"). (Jefferson's App. Exs. A1-A2; Preston's App. Exs. A-C; Rowell's App. Exs. A-B.) For example, in his affidavit, Freeman states that he was "not yelling loudly or screaming" and that, while waiting for a sergeant to arrive, he "calmly positioned [him]self in the customer service area." (Freeman Aff. 3-4, at ¶¶ 4, 6.) But in the Wal-Mart video, Freeman can be seen walking to the front of the line past other customers, pacing around the customer-service area, and gesturing with his arms at persons off-screen. (Jefferson's App. Ex. A-2; Preston's App. Exs. A-B; Rowell's App. Exs. A-B.) And in the Jefferson audio clip, Freeman can be heard in the background yelling incessantly. (Jefferson's App. Ex. A-1; Preston's App. Ex. C.)

Freeman also insists in his affidavit that he did not create a disturbance at Wal-Mart. (Freeman Aff. 2, 4, at ¶¶ 3, 6.) But the Wal-Mart video reveals that a number of customers turned to

stare at Freeman during the incident in question and that Padmore, the on-duty shift manager, came over to speak with Freeman. (Jefferson's App. Ex. A-2; Preston's App. Exs. A-B; Rowell's App. Exs. A-B.) Moreover, the Jefferson audio clip reveals that Freeman was shouting in the store. (Jefferson's App. Ex. A-1; Preston's App. Ex. C.) Thus, Freeman's affidavit testimony is at odds with the video and audio evidence on the record and should be accorded no probative value. *See Nickols v. Morris*, 705 F. Supp. 2d 579, 585 (N.D. Tex. 2010) ("[W]here a videotape exists that discredits the nonmoving party's version of events so that no reasonable jury could believe it, a court is required to view the facts in the light depicted by the videotape.").

## II. Background

This case arises out of an incident that occurred at a Wal-Mart store in Fort Worth, Texas, on November 16, 2008, involving Freeman and officers Jefferson, Preston, and Rowell. Freeman had come to Wal-Mart's customer-service area purportedly to retrieve his wallet, which he had left at the store on a prior occasion. (Pl.'s Br. in Supp. of Resp. to Jefferson's Mot. Summ. J. 1 (doc. 31).) Freeman was accompanied by his two nephews, ages one and four, whom he was pushing in a shopping cart. (*Id.;* Jefferson's App. Ex. A-2; Preston's App. Exs. A-B; Rowell's App. Exs. A-B; App. to Freeman's Resp. to Jefferson's Mot. Summ. J. Ex. 1.) Upon his

arrival, Freeman went directly to the service desk, bypassing a number of customers waiting in line. (Jefferson's App. Exs. A-2; Preston's App. Exs. A-B; Rowell's App. Exs. A-B; Jefferson Aff. 2; Freeman's Resp. App. Ex. 1.) After a member of Wal-Mart's staff directed Freeman to the end of the line, Freeman got in line and, according to the Jefferson affidavit, began to complain about having to wait. (Jefferson's App. Exs. A-2; Preston's App. Exs. A-B; Rowell's App. Exs. A-B; Freeman's Resp. App. Ex. 1; Jefferson Aff. 2.) After some time, Freeman began to walk back and forth across the service area while speaking in a loud voice. (Jefferson's App. Exs. A-2; Preston's App. Exs. A-B; Rowell's App. Exs. A-B; Jefferson Aff. 2; Freeman's Resp. App. Ex. 1.)

Jefferson, who was working off-duty as a security guard at the time, approached Freeman and instructed him to calm down. (Jefferson's App. Exs. A-2; Preston's App. Exs. A-B; Rowell's App. Exs. A-B; Jefferson Aff. 2; Freeman's Resp. App. Ex. 1.) According to the Jefferson affidavit, after Freeman declined to abide by Jefferson's instructions, Jefferson directed Freeman to step outside to continue their discussion. (Jefferson Aff. 2.) Once again, apparently, Freeman refused. (*Id.*) Following this confrontation, Freeman asked to speak with Jefferson's superior. (Jefferson Aff. 2; Padmore Aff. 2.) In accordance with Freeman's wishes, Jefferson radioed his dispatcher for a sergeant and also

requested backup.[9]  (Jefferson Aff. 2; Jefferson's App. Ex. A-1; Preston's App. Ex. C.)  In addition, Freeman himself called "9-1-1" to request a "ranking sergeant."  (Preston's App. Ex. D; Jefferson Aff. 2.)

A short time later, Preston arrived to assist Jefferson. (Jefferson's App. Exs. A-2; Preston's App. Exs. A-B; Rowell's App. Exs. A-B; Freeman's Resp. App. Ex. 1; Jefferson Aff. 2.; Preston Aff. 1-2; Padmore Aff. 2.)  Jefferson explained the situation to Preston, and the two remained with Freeman while awaiting the arrival of a sergeant.  (Jefferson's App. Exs. A-2; Preston's App. Exs. A-B; Rowell's App. Exs. A-B; Freeman's Resp. App. Ex. 1; Preston Aff. 2.)  Padmore, Walmart's on-duty shift manager, also came over to speak with Freeman during this time and attempted to calm him down.  (Jefferson's App. Exs. A-2; Preston's App. Exs. A-B; Rowell's App. Exs. A-B; Freeman's Resp. App. Ex. 1; Padmore Aff. 1-3.)

Rowell, a sergeant, eventually arrived and obtained from Jefferson and Preston a description of what had so far occurred. (Jefferson's App. Exs. A-2; Preston's App. Exs. A-B; Rowell's App. Exs. A-B; Freeman's Resp. App. Ex. 1; Jefferson Aff. 2-3; Rowell Aff. 2; Padmore Aff. 2.)  Jefferson apparently informed Rowell that he intended to arrest Freeman.  (Jefferson's App. Exs. A-2;

---

[9]  An audio clip of Jefferson's call to the dispatcher has been offered into evidence.  (Jefferson's App. Ex. A-1; Preston's App. Ex. C.)  In the clip, Freeman can be heard yelling in the background for the duration of the call. (Jefferson's App. Ex. A-1; Preston's App. Ex. C.)

Preston's App. Exs. A-B; Rowell's App. Exs. A-B; Freeman's Resp. App. Ex. 1; Jefferson Aff. 2-3; Rowell Aff. 2; Padmore Aff. 2.) Rowell then approached Freeman and attempted to speak with him briefly. (Jefferson's App. Exs. A-2; Preston's App. Exs. A-B; Rowell's App. Exs. A-B; Freeman's Resp. App. Ex. 1; Rowell Aff. 2.) According to the officers, Freeman refused to cooperate, so Rowell instructed Preston and Jefferson to arrest him.[10] (Rowell Aff. 2; Jefferson Aff. 3; Preston Aff. 2; Padmore 2.)

As the officers approached Freeman to place him under arrest, Freeman grabbed his one-year-old nephew from the shopping cart with his free hand (the other was holding his phone) and held his nephew in front of him. (Jefferson's App. Exs. A-2; Preston's App. Exs. A-B; Rowell's App. Exs. A-B; Freeman's Resp. App. Ex. 1; Jefferson Aff. 3; Preston Aff. 2; Rowell Aff. 2; Padmore Aff. 2-3.) A struggle thereafter ensued, and Freeman's nephew was wrestled away and removed from the tussle by Padmore. (Jefferson's App. Exs. A-2; Preston's App. Exs. A-B; Rowell's App. Exs. A-B; Freeman's Resp. App. Ex. 1; Jefferson Aff. 3; Preston Aff. 3; Rowell Aff. 2-3; Padmore Aff. 3.) At some point during the struggle, Freeman head-butted Preston. (Preston's App. Ex. N; Jefferson Aff. 3; Preston

---

[10] Freeman denies that he was creating a disturbance when the officers arrested him and insists that the officers had no reason to approach him at all. As the Court has explained, however, this assertion is simply at odds with the Wal-Mart video and the Jefferson audio clip, as well as the affidavit testimony of Padmore, a relatively disinterested third party. And in light of the Court's decision to accord no probative value to the Freeman affidavit, there is no evidence on the record to genuinely dispute the defendants' evidence of Freeman's disruptive and uncooperative conduct, which is consistent with the Wal-Mart video and the Jefferson audio clip.

Aff. 5; Rowell Aff. 3.)  The officers then wrestled Freeman to the ground.[11]  (Jefferson's App. Exs. A-2; Preston's App. Exs. A-B; Rowell's App. Exs. A-B; Freeman's Resp. App. Ex. 1; Jefferson Aff. 3; Preston Aff. 3; Rowell Aff. 3; Padmore Aff. 3.)

When Freeman continued to resist the officers' efforts at arresting him, Rowell called for the use of a taser gun. (Jefferson's App. Exs. A-2; Preston's App. Exs. A-B; Rowell's App. Exs. A-B; Freeman's Resp. App. Ex. 1; Jefferson Aff. 3; Preston Aff. 3; Rowell Aff. 3; Padmore Aff. 3.)  Preston, therefore, twice delivered electric shocks from his taser gun to the back of Freeman's legs.[12]  (Jefferson Aff. 3; Preston Aff. 3; Rowell Aff. 3.)  Subsequently, Freeman was handcuffed and taken into custody. (Jefferson's App. Exs. A-2; Preston's App. Exs. A-B; Rowell's App. Exs. A-B; Freeman's Resp. App. Ex. 1; Padmore Aff. 3.)

Freeman was later charged with the offenses of "injury to a child" and "assault of a public servant." (Preston's App. Exs. J-K.)  Those charges, however, were eventually dropped.  (App. to

---

[11]  Freeman contends that "[w]hile on the ground[,] his face was pushed into the floor so hard [it] knocked out one of his permanent front teeth[,] causing immediate pain and bleeding." (Pl.'s Resp. Br. to Jefferson's Mot. Summ. J. 4.)  But given the Court's decision concerning the Freeman affidavit's lack of probative value, there is no evidence on the record that genuinely supports this assertion.  Moreover, a post-incident photo of Freeman offered by Preston does not reveal the injuries of which Freeman complains. (Preston's App. Ex. N.)

[12]  Preston used a "TASER X26" electronic control device ("ECD") in "drive-stun" mode. (Preston Aff. 3.)  Apparently, when in drive-stun mode, the ECD does not shoot projectiles or cause neuromuscular incapacitation, as it would in "probe" mode. (*Id.* at 3-4.)  Instead, it is a pain-compliance tool that causes instant pain upon contact. (*Id.*)

Freeman's Resp. to Jefferson's Mot. Summ. J. Ex. 4.)  On November 15, 2010, Freeman filed the instant lawsuit against the defendants under 42 U.S.C.A. § 1983 (West 2011).  The officers contend that they are entitled to qualified immunity and now move for summary judgment on that issue, and the City seeks dismissal of the state-law claims against the individual defendants under Section 101.106 of the Texas Civil Practice and Remedies Code.

III.  Motions for Summary Judgment

   A.  Legal Standard

When the record establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," summary judgment is appropriate.  Fed. R. Civ. P. 56(a).  "[A dispute] is 'genuine' if it is real and substantial, as opposed to merely formal, pretended, or a sham." *Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 489 (5th Cir. 2001) (citation omitted).  A fact is "material" if it "might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

To demonstrate that a particular fact is, or cannot be, genuinely in dispute, a party must either (1) cite to particular parts of materials on the record (e.g., affidavits), (2) show that the materials cited by the adverse party do not establish the presence or absence of a genuine dispute, or (3) show that the adverse party cannot produce admissible evidence to support the

fact. Fed. R. Civ. P. 56(c)(1). Although the Court "need consider only the cited materials, . . . it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). In evaluating whether summary judgment is appropriate, the Court "views the evidence in the light most favorable to the nonmovant, drawing all reasonable inferences in the nonmovant's favor." *Sanders-Burns v. City of Plano*, 594 F.3d 366, 380 (5th Cir. 2010) (citation omitted) (internal quotation marks omitted). "[I]f no reasonable juror could find for the non-movant," summary judgment should be granted. *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

   B.  Analysis

   "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "The qualified immunity inquiry thus involves two prongs that must be answered affirmatively for an official to face liability: (1) whether the defendant's conduct violated a constitutional right, and (2) whether the defendant's conduct was objectively unreasonable in light of clearly established law at the time of the violation." *Terry v. Hubert*, 609 F.3d 757, 761 (5th Cir. 2010) (citing *Pearson*, 129 S. Ct. at 816). The Court may begin its inquiry with either

prong. *Id.* (citing *Pearson*, 129 S. Ct. at 818).

"When a defendant invokes qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense." *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009) (citing *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc)). "Because qualified immunity is 'an immunity from suit rather than a mere defense to liability[,] it is effectively lost if a case is erroneously permitted to go to trial.'" *Pearson*, 129 S. Ct. at 815 (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). Thus, at the summary-judgment stage, "[t]he plaintiff's evidentiary assertions--but not mere allegations--are taken as true in the court's evaluation of qualified immunity." *Terry*, 609 F.3d at 761 (citing *Manis v. Lawson*, 585 F.3d 839, 842 (5th Cir. 2009); *see also Pearson*, 129 S. Ct. at 815 ("[T]he 'driving force' behind creation of the qualified immunity doctrine was a desire to ensure that 'insubstantial claims against government officials will be resolved prior to discovery.'" (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 n.2 (1987))).

1.    Whether Defendants Violated a Constitutional Right

Freeman contends that Jefferson, Preston, and Rowell unlawfully detained him and used excessive force in arresting him, thereby violating his Fourth-Amendment right to be free from

unreasonable seizures.[13]  In addition, Freeman asserts bystander-liability, due-process, and conspiracy claims.

"Both unlawful detention and excessive force implicate the Fourth Amendment's proscription against unreasonable seizures." *Peterson v. City of Fort Worth*, 588 F.3d 838, 845 (5th Cir. 2009). With regard to Freeman's unlawful-detention claim, it is not apparent whether Freeman is challenging the initial decision to detain him as unmerited or the length of his detainment as excessive.  Based on the only credible summary-judgment evidence before the Court, Jefferson had probable cause to detain Freeman initially for disturbing the peace,[14] and Preston and Rowell were entitled to rely on Jefferson's account of the events in providing assistance.  *See U.S. v. Armendariz-Mata*, 949 F.2d 151, 153 (5th Cir. 1991) (recognizing that "officers may base probable cause upon information relayed to them by fellow officers").  Furthermore, the officers did not detain Freeman any longer than was necessary to effectuate his arrest.  The Wal-Mart video and the Jefferson audio clip, along with the Padmore affidavit, make clear that Freeman had

_____

[13]  In his state-court petition, Freeman appears to base his excessive-force claims on both the Fourth and Fourteenth Amendments. (Pl.'s Original Pet. 9-10, at ¶ 24.)  His claim, however, is to be analyzed under the Fourth Amendment--not the Fourteenth.  *See Graham v. Connor*, 490 U.S. 386 (1989) (holding that "all claims that law enforcement officers have used excessive force--deadly or not--in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard").

[14]  Under Texas Penal Code § 42.01(5), "[a] person commits an offense if he intentionally or knowingly . . . makes unreasonable noise in a public place." Tex. Penal Code § 42.01(5) (West 2011).

created a disturbance prior to being approached by any of the officers and that he was uncooperative with the subsequent attempts of the officers to resolve the situation peacefully. (Jefferson's App. Exs. A-1, A-2; Preston's App. Exs. A-C; Rowell's App. Exs. A-B; Jefferson Aff. 2; Freeman's Resp. App. Ex. 1; Padmore Aff. 1-3.) Moreover, Freeman was subsequently indicted for the offense of injury to a child and aggravated assault of a public servant, and a magistrate later determined that there was probable cause for Freeman's arrest. (Preston's App. Exs. H-K.) This broke the causal chain between the officers and the allegedly unlawful detainment. *See Deville v. Marcantel*, 567 F.3d 156, 170 ("It is well settled that if facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation for false arrest, insulating the initiating party." (citations omitted) (internal quotation marks omitted)). Because Freeman has presented no credible evidence raising a dispute of material fact as to his alleged unconstitutional detainment, the defendants are entitled to judgment on that claim.

Moreover, Freeman's excessive-force claims likewise fail. "To prevail on [his] excessive force claim, the plaintiff[] must establish '(1) [a significant] injury (2) [that] resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable.'" *Ontiveros v. City of Rosenberg, Tex.*, 564 F.3d 379, 382 (5th Cir. 2009)

19

(quoting *Freeman v. Gore*, 483 F.3d 404, 416 (5th Cir. 2007)). "An injury is generally legally cognizable when it results from a degree of force that is constitutionally impermissible--that is, objectively unreasonable under the circumstances." *Collier v. Montgomery*, 569 F.3d 214, 218 (5th Cir. 2009) (quoting *Bush v. Strain*, 513 F.3d 492, 501 (5th Cir. 2008)). And "[t]he objective reasonableness of the force, in turn, depends on the facts and circumstances of the particular case, such that the need for force determines how much force is constitutionally permissible." *Id.* at 218-19 (quoting *Bush*, 513 F.3d at 218.) The reasonableness inquiry involves considering "whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989).

According to Freeman, Preston's use of the taser against him, along with the officers' collective effort in tackling him to the ground, constituted excessive force.[15] But in the Court's view, there is no material fact, disputed or undisputed, that would support Freeman's claim of excessive force, given the circumstances surrounding his arrest. The Wal-Mart video, the Jefferson audio

---

[15] As previously noted, Freeman contends that "[w]hile on the ground[,] his face was pushed into the floor so hard [it] knocked out one of his permanent front teeth[,] causing immediate pain and bleeding." (Pl.'s Resp. Br. to Jefferson's Mot. Summ. J. 4.) But given the Court's determination that the Freeman affidavit should be accorded no probative value, there is no evidence on the record that genuinely supports this assertion. And while the Wal-Mart video is inconclusive on this point, a photo offered by Preston does not reveal the injuries that Freeman complains of. (Preston's App. Ex. N.)

clip, the officers' affidavits, and the Padmore affidavit all indicate that Freeman created a disturbance in the store, that Freeman refused to cooperate with the officers or to calm down, that he vigorously resisted arrest even after being wrestled to the ground, and that Preston ceased using the taser once Freeman was successfully handcuffed. (Jefferson's App. Exs. A, A-1, A-2, B-D; Preston's App. Exs. A-C, E-G; Rowell's App. Exs. A-B; Freeman's Resp. App. Ex. 1.) In addition, there is undisputed evidence that Freeman head-butted Preston and that Freeman placed his one-year-old nephew in harm's way. (Jefferson Aff. 3; Preston Aff. 2-3, 5; Rowell Aff. 2-3; Padmore Aff. 2-3.) And regardless of whether the officers were accurate in all of their calculations concerning the threat that Freeman posed to others' safety, "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396.

In view of these undisputed facts, the Court concludes that no fact-finder could reasonably second-guess the officers' actions in detaining Freeman, wrestling him to the ground, and tasering him to effect their arrest. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.") Freeman has thus not placed before this Court a dispute of material

fact as to any element of his excessive-force claims, and they fail as a matter of law.

Freeman also asserts claims for bystander liability against each of the officers for failing to prevent use of the taser against him. Without a finding of excessive force, however, there is nothing for which the bystander officers may be liable. *See Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995) (observing that an officer may be liable under § 1983 when the officer is "present at the scene and does not take reasonable measures to protect a suspect from another officer's **use of excessive force**" (emphasis added)). Moreover, even assuming excessive force was applied, Freeman's bystander claim against Jefferson nevertheless fails because it was inopportune and unrealistic for Jefferson to intervene and prevent the application of the taser. *See Vasquez v. Chacon*, No. 3:08-CV-2046-M, 2009 WL 2169017, at *6 (N.D. Tex. July 20, 2009) ("An officer must have had a reasonable opportunity to realize the excessive nature of the force and a realistic opportunity to stop it in order for the duty to intervene arise." (citations omitted)). And Preston and Rowell were not bystanders at all, but rather were the ones who actually ordered and administered the application of the taser gun. Therefore, Freeman's bystander-liability claims fail as a matter of law.

Finally, Freeman asserts due-process and conspiracy claims. However, while he includes those claims in his state-court petition, he does not address those claims in his Rule 7 reply or

his response brief.   Because he has presented no evidence or argument on these claims, they fail as a matter of law.   *See* Fed. R. Civ. P. 56(c)(1)(e) (providing that a court may award summary judgment where the non-movant "fails to properly support an assertion of fact" so long as "the motion and supporting materials--including the facts considered undisputed--show that the movant is entitled to it").

> 2.   Whether Defendants Acted Unreasonably in Light of Clearly Established Law

Even assuming that constitutional violations occurred, Freeman has failed to show that the defendants acted unreasonably in light of clearly established law at the time of his arrest.   Indeed, a number of courts faced with facts involving similar uses of taser guns by officers have concluded that no § 1983 violation occurred. *See, e.g.*, *Draper v. Reynolds*, 369 F.3d 1270, 1278 (11th Cir. 2004) (holding that use of a taser gun to effectuate plaintiff's arrest during a traffic stop did not constitute excessive force where plaintiff was "hostile, belligerent, and uncooperative"); *Gruver v. Borough of Carlisle*, No. 4:CV 05-1206, 2006 WL 1410816, at *4-5 (M.D. Pa. May 19, 2006) (holding that officers' detention and use of taser on defendant in convenient store was objectively reasonable where plaintiff resisted the officers' attempts to restrain him).


IV. Motion to Dismiss

Section 101.106 of the Texas Civil Practice and Remedies Code provides that "[t]he filing of a suit under [the Texas Tort Claims Act ("TTCA")] against a governmental unit constitutes an irrevocable election by the plaintiff and immediately and forever bars any suit or recovery by the plaintiff against any individual employee of the governmental unit regarding the same subject matter." Tex. Civ. Prac. Rem. Code § 101.106(a) (West 2011). Thus, "[i]f a suit is filed under [the TTCA] against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit." Tex. Civ. Prac. Rem. Code. § 101.106(e). The phrase "'under this chapter' does not limit the statute's reach to tort claims for which the TTCA waives immunity." *Bustos v. Martini Club Inc.*, 599 F.3d 458, 463 (5th Cir. 2010). Rather, because the TTCA is the only avenue for common-law recovery against a governmental unit, "if a plaintiff brings virtually any state common law tort claim against both a governmental unit and its employees, § 101.106(e) will allow the employee defendants to be dismissed if the governmental unit so moves." *Id*.

Thus, because the City has so moved, any state-law tort claims that Freeman is asserting against the individual defendants should be dismissed.[16]

---

[16] Freeman did not file a response to the City's motion to dismiss.

V. Conclusion

In light of the foregoing, the Court concludes that the individual defendants are entitled to qualified immunity as a matter of law and that section 101.106 of the Texas Civil Practice and Remedies Code mandates dismissal of any and all state-law tort claims against the individual defendants. Accordingly, the officers' motions for summary judgment (docs. 13, 21, 23) and the City's motion to dismiss (doc. 29) are GRANTED. All claims in the above-styled and -numbered cause against defendants Jefferson, Preston, and Rowell are DISMISSED WITH PREJUDICE.

SIGNED July 7, 2011.

_Terry R. Means_

TERRY R. MEANS
UNITED STATES DISTRICT JUDGE